UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAUN MICHAEL SNYDER | CIVIL ACTION |
| VERSUS | NO. 20-2158 |
| MAJ. STEPHEN BERGERON, ET AL. | SECTION: "H"(3) |

### PARTIAL REPORT AND RECOMMENDATION

Shaun Michael Snyder, a state pretrial detainee, filed this federal civil action pursuant to 42 U.S.C. § 1983. He sued Major Stephen Bergeron, Richard Neal, and Sheriff Jerry Larpenter. In this lawsuit, plaintiff alleges that the defendants failed to take appropriate measures to protect him from and treat him for COVID-19.

Defendant Neal filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiff was ordered to file a response to that motion by no later than November 25, 2020.[2] To date, he has filed neither an opposition to the motion nor a motion for leave to file an amended complaint to address the purported pleading defects alleged by Neal in the motion to dismiss. Therefore, the motion stands unopposed.

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). However, "[t]o

---

[1] Rec. Doc. 12. **The remaining defendants have not joined in the motion, and this Report does not address the claims asserted against them.**
[2] Rec. Doc. 14.

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is *plausible on its face*. Factual allegations must be enough to raise a right to relief *above the speculative level*, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (emphasis added; footnote, citation, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a *sheer possibility* that a defendant has acted unlawfully. Where a complaint pleads facts that are *merely consistent with* a defendant's liability, *it stops short of the line between possibility and plausibility of entitlement to relief.*

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added; citations and quotation marks omitted).

In the complaint, plaintiff's statement of his claim against Neal, *in its entirety*, reads: "Dr. Peaty Neal – Not providing test for the virus upon entrance into the jail. Not providing proper PPE and issuing Tylenol and Ibuprophen [sic] for headaches when CDC guidelines that [sic] it is an enhancer of the virus."[3]

In his motion to dismiss, Neal argues that the foregoing vague, unadorned allegations are insufficient to state a claim against him in either his official or individual capacity. He is correct.

As to any official-capacity claim, it is clear that "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-

---

[3] Rec. Doc. 1, p. 5. Although plaintiff refers to Neal in the complaint as a doctor, it is the Court's understanding that Neal serves as the jail's medical administrator but is not himself a physician. Nonetheless, for the purposes of this decision, it is immaterial whether Neal is a licensed physician or merely some other type of medical professional.

capacity claim against Neal would in reality be a claim against the local governmental body itself. However, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, *a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted.* To satisfy the cause in fact requirement, *a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom.* The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added; citations, quotation marks, and brackets omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 F. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 F. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom. Therefore, if he is asserting a claim against Neal in his official capacity, plaintiff's allegations fall short of what is required to state a proper official-capacity claim.

If plaintiff is instead asserting individual-capacity claims, he fares no better. The United States Fifth Circuit Court of Appeals has explained: "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.

This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). In addition, it must be remembered that a defendant's "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

Neal argues that the allegations in the complaint do not expressly state that *he* was *personally* involved in the conduct of which plaintiff complains. Technically, that may be accurate; however, the allegations listing the purported misconduct immediately follow Neal's name. One can therefore reasonably infer that plaintiff, who is proceeding *pro se*, was indicating that it was Neal himself who took (or failed to take) the actions in question. Accordingly, the Court will assume that is in fact what plaintiff was attempting to allege,[4] given that – regardless – his allegations, even when so construed, are still insufficient to state a plausible claim against Neal for the following reasons.

The first two of plaintiff's allegations, i.e. that inmates entering the jail were not tested for COVID-19 and that PPE (personal protective equipment) was not provided to inmates, are essentially ones that Neal failed to adequately protect plaintiff from harm, namely COVID-19. Clearly, pursuant to the Fourteenth Amendment, penal officials have a duty to provide a pretrial detainee in their custody "with basic human needs, including … protection from harm protection from harm, during [his] confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). That said, those officials "are expected to provide only reasonable, not absolute, safety."

---

[4] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

4

Williams v. Gusman, Civ. Action No. 15-96, 2015 WL 5970424, at *8 (E.D. La. Oct. 14, 2015) (quotation marks omitted).

Therefore:

> To establish a failure-to-protect claim under § 1983, [an inmate] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted). Accordingly, "[a]ctual knowledge and appreciation of the risk are required." Smith v. Jaramillo, 394 F. App'x 183, 185 (5th Cir. 2010). Moreover, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. To reach the level of deliberate indifference, official conduct must be 'wanton,' which is defined to mean 'reckless.'" Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 420 (5th Cir. 2017) (citation and quotation marks omitted). Lastly, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); accord Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008).

The undersigned finds that the claim concerning the failure to test inmates entering the facility should be dismissed for the following reasons.

As an initial matter, the Court notes that plaintiff signed his federal complaint on June 28, 2020.[5] Therefore, one must infer that the facts he alleged therein occurred at some unspecified

---

[5] Rec. Doc. 1, p. 6.

time *prior* to that date. That point is relevant because, as of June 28, 2020, the pandemic was still in its early stages in this country and information about – and supplies to detect and combat – COVID-19 were limited.

However, even if the Court assumes for the purposes of this decision that sufficient test kits were available to test all incoming inmates for COVID-19 and, further, that Neal had the authority to unilaterally require that all such individuals be tested, a proposition which seems questionable at best,[6] the fact that such testing was not ordered is not, in and of itself, sufficient for the Court "to infer more than the *mere possibility* of misconduct." Iqbal, 556 U.S. at 679 (emphasis added). For example, there is no suggestion that the newly admitted inmates were known or suspected to be infected – or, alternatively, if they were, that no other alternative measures were in place to prevent them from spreading the disease within the facility once admitted. Without more, a mere allegation that a jail continued to admit new, untested inmates during the pandemic is insufficient to cross "the line between possibility and plausibility of entitlement to relief," as is necessary to state a claim. See Iqbal, 556 U.S. at 678.

The allegation that PPE was not provided to inmates is similarly problematic. Although plaintiff does not specify the type of PPE he believes should have been provided, he is presumably referring to face masks, the most common form of PPE. If so, the fact that he signed his complaint in June of 2020 is again relevant. For example, in a case arising out the Idaho State Correctional Center, a prisoner asserted a § 1983 claim predicated on an allegation that visitors, staff, and inmates were not required to wear masks from **March to June of 2020**. United States District

---

[6] Louisiana law provides that "[e]ach sheriff shall be keeper of the public jail of his parish ...." La. Rev. Stat. Ann. §§ 13:5539(C) and 15:704. It, therefore, seems more likely that the sheriff, not the jail unit's medical administrator, would have the final say as to whether all incoming inmates are tested.

Judge B. Lynn Winmill determined that allegation was insufficient to state a plausible failure-to-protect claim, noting:

> That prison officials did not require face masks for the first few months of the pandemic does not establish deliberate indifference. What we know about COVID-19 and the spread of the novel coronavirus is constantly changing, as new information is released by medical researchers, agencies, and other authorities. At first, it was unclear whether cloth face masks would be particularly effective in curbing the spread of the virus. Of course, we now know that such masks do help reduce the risk of transmission. But it was not unreasonable for prison officials to refrain from requiring face masks in the early months of the pandemic, particularly when access to such masks was limited.

Kesling v. Tewalt, Case No. 1:20-cv-00334, 2020 WL 4496495, at *6 (D. Idaho Aug. 4, 2020).[7] The same is true in this case. Therefore, again, the facts as alleged in the complaint regarding the failure to provide PPE are simply insufficient to state a *plausible* (as opposed to a merely *possible*) failure-to-protect claim. See Iqbal, 556 U.S. at 678.

As to plaintiff's allegation that he was provided with Tylenol (acetaminophen) and Ibuprofen to treat his COVID-related symptoms after he contracted the virus, it is clear that "[t]he Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials." Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020) (quotation marks omitted). However, even if it is assumed that plaintiff's infection rose to the level of a serious medical need,[8] this medical claim should still be dismissed

---

[7] See also Mayfield v. Peissig, No. 20-cv-269, 2020 WL 3414757, at *2 (W.D. Wis. June 22, 2020) ("[P]laintiff's general allegations about a lack of social distancing and inconsistent mask use at the prison do not suggest that the conditions of plaintiff's confinement are inhumane or that defendants are acting with deliberate indifference to a significant risk of harm to plaintiff's health or safety."), appeal dismissed, No. 20-1982, 2020 WL 7238281 (7th Cir. Aug. 12, 2020).

[8] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

because, without more, plaintiff's allegation is again insufficient to state a plausible claim of "deliberate indifference" for the following reasons.

Obviously, if a state actor *intentionally* provides an inmate with the *wrong* medical treatment, that could, depending on the circumstances, constitute deliberate indifference. See, e.g., Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet. … [T]he plaintiff must show that the officials refused to treat him, ignored his complaints, *intentionally treated him incorrectly*, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." (emphasis added; citation and quotation marks omitted)); Waldrop v. Lacey, No. 3-02-CV-2347, 2003 WL 21500404, at *2 (N.D. Tex. Apr. 21, 2003) ("Plaintiff alleges that Nurse Lacey became impatient one morning while dispensing medication and threatened to 'fix him.' After taking the prescription drugs provided by Lacey on March 7 and 14, 2002, plaintiff experienced chest pains. He was finally transported to Parkland Hospital where a doctor diagnosed him with a heart attack. Lacey later told plaintiff that she gave him the wrong medication to 'teach [him] not to talk back.' These allegations, if proved, are sufficient to state a deliberate indifference claim for denial of medical care against Nurse Lacey." (citations omitted)).

Here, however, even if the Court broadly construes plaintiff's allegation as one that Neal *personally* provided (or ordered that plaintiff be provided) with Tylenol and Ibuprofen, his allegations still fall short. As noted, the crux of plaintiff's claim is that he was issued those medications for headaches despite the fact that "CDC guidelines" warned that those drugs were actually "enhancer[s] of the virus."[9] But there are two problems.

---

[9] Rec. Doc. 1, p. 5.

First, the CDC's own website seemingly rebuts plaintiff's suggestion. In fact, that website indicates that those medications are *appropriate* treatments for COVID symptoms.[10]

Second, more importantly, even if any such guidelines existed, plaintiff has not alleged that Neal was aware of those guidelines. Without such an allegation, the Court cannot assume that Neal's action, even if medically inappropriate, was anything more than simple negligence or malpractice – which, simply put, are deviations from standards of care not actionable under federal constitutional law in a § 1983 lawsuit. See, e.g., Nunley v. Mills, 217 F. App'x 322, 324 (5th Cir. 2007) (holding that plaintiff's allegation that he was "prescribed the wrong medication" for his condition, "at best, … has stated a claim of negligence, malpractice, or disagreement with treatment, which will not support a finding of deliberate indifference …."). Rather, allegations negligence or medical malpractice present issues of *state* law for *state* courts. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013). See also Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992) (noting that the fact that an inmate's "treatment may not have been the best that money could buy … fall[s] far short of establishing deliberate indifference by the prison authorities").

---

[10] See, e.g., Centers for Disease Control and Prevention, COVID-19 (Coronavirus Disease): Potential Treatments (updated December 8, 2020), https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html ("Your healthcare provider also may recommend the following to relieve symptoms and support your body's natural defenses. … Taking medications, like acetaminophen or ibuprofen, to reduce fever."); Centers for Disease Control and Prevention, COVID-19 (Coronavirus Disease): What to Do If You are Sick (updated December 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html ("Get rest and stay hydrated. Take over-the-counter medicines, such as acetaminophen, to help you feel better.").

## RECOMMENDATION

It is therefore **RECOMMENDED** the unopposed motion to dismiss filed by Richard Neal, Rec. Doc. 12, be **GRANTED** and that the claims against Neal be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __21st__ day of January, 2021.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**